GEORGE G. GREEN

<em>v.</em>

KATE McCRANE et al.

1. The act of March 7th, 1893 (*Gen. Stat. p. 2111 § 41*), declares that any chattel mortgage upon household goods and furniture in the use and possession of any family in this state, not given to secure the purchase-money for the goods &c., shall be void unless signed &c. by both the husband and wife of the family.—*Held*, that it must appear by allegation and proof that the household

goods were in the *use* of the family, as well as in their mere *possession*, before the act would be applied. *Semble* that if the mortgage included not only household goods but also other property, and the act were applied, it would be held in equity to make the mortgage void only as to the household goods.

2. A debtor in failing circumstances may secure one or more creditors by chattel mortgage in preference to others; and such a chattel mortgage, if honestly given simply to secure the favored creditor and without any design to benefit the debtor, or to hinder his other creditors, is a valid security. *Milton* v. *Boyd, 4 Dick. Ch. Rep. 142*, distinguished.

On bill and affidavits and order to show cause &c.·

The complainant, George G. Green, is the owner of a farm in Harrison township, Gloucester county. He files this bill against Kate McCrane, John McCrane and Jeremiah McCrane, defendants. Green had leased his farm to John and Jeremiah Mc-Crane, who were in the possession of a considerable quantity of goods and chattels, consisting of farming stock, implements &c., and John McCrane was possessed of a large amount of household furniture, all situated on the complainant's farm. On February 1st, 1897, John and Jeremiah became indebted to the complainant for $425 rent, which then came to be due on the lease of the farm made to them by the complainant, and on February 9th, 1897, the complainant distrained all the above-named goods and chattels, furniture &c., and, after seizure, impounded them on the farm.

Previous to this seizure, John and Jeremiah McCrane had, on January 5th, 1897, made a chattel mortgage to the defendant Kate McCrane (who was a daughter of John) upon the goods and furniture subsequently distrained by the complainant. The chattel mortgage, as stated in the bill, is conditioned for the payment of $943.75 in one month from the date thereof, according to the tenor of a bond ·bearing even date therewith, given by John and Jeremiah McCrane to Kate McCrane.

The bill states that a copy of the chattel mortgage is annexed to the bill. The complainant alleges that this chattel mortgage is without consideration—is not in good faith ; that it was made to hinder and delay the complainant in the collection of his claim against John and Jeremiah McCrane ; that the mortgage

is void and of no effect, because the affidavit annexed to it does not conform to the requirements of the statute, and because John McCrane is married and has a wife residing with him on the farm, and the chattel mortgage is given in part on household goods in the possession of John McCrane and his wife; and the complainant claims that by the terms of the statute passed March 7th, 1893 (*Gen. Stat. p. 2111*), the mortgage is absolutely null and void. The complainant shows that the chattel mortgagee, on February 19th, 1896, advertised the goods mortgaged (excepting the household goods), to be sold at public vendue on February 26th, to pay and satisfy the amount of the chattel mortgage, and the complainant charges that the chattel mortgage is fraudulent, and the sale under it is also for the purpose of delaying the complainant and hindering him in the collection of his rent, and he prays for an answer by the defendants John and Jeremiah McCrane, without oath; that the chattel mortgage may be set aside and declared invalid as against the complainant; that the property may be sold under the complainant's distress warrant free from the lien of the chattel mortgage, and the proceeds, so far as may be necessary, may be applied to the satisfaction of the complainant's rent, and that Kate, John and Jeremiah McCrane may be enjoined from making sale of the goods and chattels of the said John and Jeremiah, by virtue of the chattel mortgage and the power of sale therein contained. The bill is supported by the affidavit of the private secretary of the complainant and that of the sheriff of the county, who, as bailiff, served the distress warrant. A copy of the lease of Green to McCrane is annexed to the bill, and also a copy of the distraint impounding the goods, with a list of the goods themselves. On the filing of the bill an order to show cause was allowed why injunction should not be granted according to the prayer of the bill, and upon the coming in of the order, the defendant Kate McCrane appeared by counsel, and filed in reply her own affidavit and that of the defendants Jeremiah and John McCrane.

*Mr. Austin H. Swackhamer*, for the complainant.

*Mr. John S. Jessup*, for the defendants.

GREY, V. C.

The only affidavit of the complainant which impugns the consideration of the chattel mortgage of the defendant Kate McCrane is that of the witness Harrison Livermore, the private secretary of the complainant. The witness states that he believes that the chattel mortgage was given " without any consideration paid by the said Kate McCrane and for the purpose of hindering and delaying the said George G. Green in the collection of his rent." He further states that the defendant Kate McCrane never carried on any separate business on her own account, always lived in her father's family and depending upon him for support except at times when she went out at service. So far as the consideration of the chattel mortgage is attacked by this affidavit, I think it doubtful if the showing on the part of the complainant (which is evidently upon information and belief and not knowledge) would have been sufficient to support any conclusion that the mortgage lacked consideration. When the responding affidavit of the defendant Kate McCrane is considered it is apparent that the chattel mortgage rests upon a consideration of moneys (earned by her, or given to her by other persons than the mortgagors) loaned to the mortgagors, for which they gave her various notes which all came to be payable, and then an account was stated, the amount of interest and principal was computed, the due notes were exchanged for the bond and further time of payment of the aggregate debt was given the mortgagors by the mortgagee. The evidence for the defendants on this point is, I think, conclusive.

It is further objected that the chattel mortgage is void *in toto* under the provision of the statute of March 7th, 1893. *Gen. Stat. p. 2111 § 41.* This act provides that every mortgage made upon household goods and furniture *in the use and possession of any family* in this state, not given to secure the purchasemoney for such goods and chattels thus in use and possession, shall be absolutely void unless such mortgage shall be first duly signed &c. *by the husband and wife* of the family and be duly recorded as provided by law &c.

The complainant claims that the operation of this act upon

the chattel mortgage in question is to make it wholly void, because among the things mortgaged there are enumerated sundry articles of household goods and furniture, and he insists that the terms of the act are to be strictly construed to make the mortgage void and of no effect, notwithstanding the articles of household furniture may be few in number and the other goods and chattels may constitute the more considerable portion of the goods pledged.

The intent of the act is undoubtedly to prevent the disposition, by way of chattel mortgage, of those articles of household equipment which are in the actual use of a family, without the consent of both the husband and wife of the family, obtained by their joining in the execution of the mortgage. The purpose is to protect this household furniture in the use of the family against the mortgagee, not to defeat the mortgagee's lien for the benefit of other lien creditors. The object of the act would be fully accomplished if the mortgage were to be held void to the extent that it includes household furniture. It would seem an absurd construction to give to the act, if a chattel mortgage executed only by the husband, upon a herd of cattle and a drove of horses, should be held to be totally void because it also included a rocking-chair in the actual use and possession of the family. An absurd construction will not be given to a statute when the object of the legislation is manifest and can be secured by a reasonable interpretation consistent with the words of the act. An act which prescribed a penalty against anyone not licensed by Trinity House piloting a ship on the Thames was held to apply only to ships on a voyage and not to persons in charge of a ship merely shifting from wharf to wharf to unload cargo. *Rex* v. *Lambe, 5 T. R. 76.*

But whatever construction may be given to this provision when its interpretation becomes necessary, it is certainly essential to the raising of this point that the bill should specially allege, and the proofs should make it affirmatively appear, that the instrument challenged is one of those which the act declares to be void. That it seeks to mortgage household goods and furniture which may be in storage or in stock would not put the mortgage

Green v. McCrane.

within the application of the act.   The intent of the statute is plainly that the furniture of the household in actual use by the family shall be secured for its comfort and necessity, unless the heads of the family shall join in the mortgage.   In the case in hand the bill does not allege that the household goods and furniture named in the mortgage are *in the use* and possession of any family in this state.   The bill asserts that the said "John McCrane was possessed of a large amount of household furniture, all situated on the complainant's farm ; " and in another part states that

"he is married and has a wife residing with him on the said farm, and the said chattel mortgage is given upon the household goods in the possession of the said John McCrane and his wife."

The affidavits annexed to the bill do not deal with this question at all and throw no light upon the point whether or not the household furniture was in either the use or possession of the family.   All that is proven is that the bailiff seized the goods and chattels of John McCrane situated on the demised premises, so that even if the allegation of *possession* by the family necessarily implied *use*, there is no proof of such possession to support the allegation.   The chattel mortgage itself is executed by John McCrane and Jeremiah McCrane and states that "all the goods and chattels mentioned in the schedule hereunto annexed and now in our possession " &c. ; so far as the chattel mortgage itself is evidential on the point, it shows that the possession was in John and Jeremiah McCrane, the mortgagors.   But whether the furniture consists of household goods in the use and possession of the family is not stated.   For all that appears on the face of the bill and in the proofs, the household furniture might have been in the possession of McCrane and his wife, but stored upon the complainant's farm, and not in the use of the family. The essential element required in order that the act may apply to make the mortgage void even as to household furniture, is that it should affirmatively appear, not by allegation alone but also by proof, that the household furniture was not only in the possession, but actually in the use of the family.   It is not

intended that possession merely, without use, should create the condition under which the statute would apply; and as the remedy sought is in the nature of an enforcement of a penalty, making void a contract which save for the act would be valid, the complainant must certainly make distinct averment, and also explicit proof, of those circumstances, the existence of which he claims entitles him to the administration of so severe a judgment. To declare such a mortgage totally void, the attacking party would probably be compelled to resort to the courts of law for his remedy. Equity will, in a proper case, relieve against penalties; it never hungers for their enforcement.

The chattel mortgage was further objected to on the ground that the affidavit was faulty, in that it states "that there is due on the said mortgage the sum of $943.73, beside lawful interest thereon from the fifth day of January, 1897," the complainant claiming that, by the condition of the mortgage, it is shown that it secures a bond payable in one month, while the affidavit, in its terms, indicates that the money is payable at once, at the time of taking the affidavits.

The Chattel Mortgage act, in requiring the affidavit of consideration, prescribes that it be made by the holder of the mortgage, stating the consideration "of the said mortgage, and, as nearly as possible, the amount due and to grow due thereon." The use of the words "as nearly as possible," applicable to the specifications of the amount due or to grow due on the mortgage, indicates that the act does not require precise and exact naming of a definite sum, but only a statement, as nearly as possible, of the amount due. The word "due" has been defined in this state to signify sometimes simply indebtedness, without reference to the time of payment, and at other times it means that the day of payment or render has passed. *Scudder* v. *Coryell, 5 Halst. 403; Hoyt* v. *Hoyt, 1 Harr. 143.*

In the statute requiring an affidavit of the plaintiff or his agent, on the confession of judgment on bond and warrant of attorney, the affiant is required to swear that the amount for which judgment is confessed is justly due and owing, and in the case of *Scudder* v. *Coryell* the word "due" is defined to have

been used in this statute in the sense signifying simply indebtedness. For the purpose of the inquiry in this case, it is immaterial whether the word "due" is defined to be limited to a definition of the existence of the indebtedness, or to an indication that the day of payment has passed, because the affidavit, under the authorities discussing this statutory requirement, must, in cases referring to the chattel mortgage, be considered to make the mortgage a part of the affidavit, and they are required to be read together. In *Fletcher* v. *Bonnet, 6 Dick. Ch. Rep. 515,* the court of errors held that where the affidavit expressly refers to matters stated in the mortgage, these matters must be regarded as part of the affidavit, citing previous cases to the same effect. In the case in hand, the affidavit is annexed to the mortgage, the affiant opens her affidavit by swearing that she is the mortgagee named in the *foregoing mortgage,* she further swears that the true consideration of *the said mortgage* is &c. No one can read the affidavit without being referred to the mortgage. The statement of the consideration in the affidavit and recital of the sum due in the condition of the bond must stand together, and, so taken, they notify the reader that the amount due on the mortgage, in the sense of the amount owing on the mortgage, is the sum of $943.73, and that that amount is also secured to be paid by a bond wherein it is specified that it shall come to be due in the sense of payable in one month from the date thereof. The affidavit and the chattel mortgage, when read together, sufficiently comply with the statutory requirements.

The attacks upon the chattel mortgage for defects by reason of supposed non-compliance with statutory requirements fail, and it stands, so far as these criticisms are concerned, as a valid mortgage, vesting in the defendant a legal right to the benefit of the security, and therefore not void as to the complainant or any other creditor who may subsequently have obtained a lien upon the mortgaged property.

The complainant also claims that he has a lien on the goods named in the chattel mortgage by virtue of his distraint, and although it was levied subsequently to the making and recording of the defendant Kate McCrane's chattel mortgage, he charges

that it is prior thereto, because he alleges that the mortgage was without present consideration, and was made for the purpose of defrauding and delaying creditors, and changing the title to the chattels to avoid the lien of the complainant's distraint, and he claims that as a creditor he is entitled to disregard the lien of the defendant's mortgage.

This assertion of priority requires an examination of the nature of the disputing claims of the several parties, and how far the proofs sustain the complainant's charges.

The claim of the complainant is based upon a rent which accrued on the 1st day of February, 1897. He levied under his landlord's warrant on the 9th day of that month. The lien of his distraint attached at the time of the actual seizure under the warrant. *Woodside* v. *Adams, 11 Vr. 419.* It was this levy which so fastened his claim upon the mortgaged goods that he is in a position to be considered a creditor within the meaning of the Chattel Mortgage act, holding a *status* by which he can question the efficacy of precedent liens. *Haston* v. *Castner, 4 Stew. Eq. 697; Currie* v. *Knight, 7 Stew. Eq. 487; Graham Button Co.* v. *Spielmann, 5 Dick. Ch. Rep. 123.* Before the rent accrued it was not an asset or credit of the complainant. A money rent not due, such as is reserved in the complainant's lease, is not *debitum in præsenti, solvendum in futuro;* it becomes a debt for the first time when it accrues. Had the complainant died before the rent accrued, it would not have gone as part of his assets to his personal representatives to pay his debts, but with the land, as incident to the reversion, to the succeeding holder of the title. If the complainant, during this period before the rent came to be due, could assert the holding of even a latent equity, it is certainly as favorable an attitude as he could possibly claim. He had no charge or lien whatever on his tenant's chattels. It required the statute of *8 Anne c. 14 (Gen. Stat. p. 1915 § 4)* to save the landlord's rent from the sweeping effect of a *fieri facias* levied on the tenant's goods.

It was while the complainant's claim was in this undetermined condition—a mere latent equity, of the existence of which the defendant is not shown to have had any knowledge—that her

chattel mortgage was made, delivered and recorded, and she thereby acquired a fixed legal right against the mortgagor's chattels. The complainant's equity, if it may be so defined, became fastened on the mortgagor's chattels more than a month after this by the distraint. The complainant, to secure this lien, parted with neither money nor anything of value, and made no change whatever in his position. He is neither a subsequent *bona fide* purchaser nor a *bona fide* mortgagee such as the Chattel Mortgage act contemplates. He is simply a creditor who has secured his claim by obtaining a lien upon the property of his debtor, subject to antecedent liens. The fact that his debt is charged as a lien upon the goods does give him a *status* from which he can attack other liens claimed to be precedent, but it does not, *ipso facto*, give him a right superior to such preceding liens. That superiority depends upon the existence of some infirmity in the apparently precedent lien which makes it, as to his claim, inferior.

Turning to the claim of the defendant under her chattel mortgage, the proofs show beyond all question that the consideration of her mortgage was money that she had earned by her own labor while at service, or which had been given to her by other persons than the mortgagors. This money she had from time to time loaned to the mortgagors, and had received their notes as evidences of their debt. The notes had all come to be due and payable when the chattel mortgage was taken; the complainant's rent was not yet due. If there had been a purpose to defraud the complainant as he alleges, the mortgage could have been made immediately payable and the property sold before the complainant could have acquired a lien. Instead of this, time was given to the mortgagors, and proceedings to sell were only taken after the complainant had himself seized the goods by his distraint, and thus forced a realization. Any doubts which might have been raised by the fact that one of the mortgagors is the father of the mortgagee, are dispelled by the proof of the origin and character of her claim exhibited in her frank statement, which is probable in itself and wholly unrefuted. There is no showing in the case of any indication that there was any

purpose to benefit the mortgagors or to defraud or delay their creditors; on the contrary, the proof is clear that the sole intention which induced the giving of the mortgage was to secure the payment of the mortgagee's debt. The mortgagee obtained from her debtors, without any fraudulent purpose or action, a preference by way of chattel mortgage. The complainant afterwards, when his rent accrued, pursued his legal remedy and secured a lien on the mortgagor's chattels.

The question is narrowed down to the single inquiry, can debtors who owe two or more creditors, secure one of them by giving her a valid lien upon their property, where it is done without fraudulent design and simply to prefer the favored creditor? I do not think it has ever been denied that they can. In *Holbird* v. *Anderson, 5 T. R. 235,* such a preference was sustained, though the disputing creditor had judgment and was about to issue execution, and these facts were made known to the preferred creditor before he was given his preference. And it makes no difference if an honest preference of one creditor defeats the claims of the others. *Hendricks* v. *Mount, 2 South. 743.* So long as the debtor exercises this right honestly, his acts, whether the preference be created by sale or pledge, are unimpeachable. *Essex Freeholders* v. *Lindsley, 14 Stew. Eq. 194; Jones* v. *Naughright, 2 Stock. 298.* "That a debtor in insolvent circumstances may prefer certain creditors has been too long the received law of this state to be questioned now." *National Bank* v. *Sprague, 6 C. E. Gr. 539.* And in *Bank* v. *Cummins, 12 Stew. Eq. 580,* the right to prefer was supported, even when the preferred creditor was aware at the time that the vendee, who gave him such a lien for a debt due from his vendor, had taken his title in fraud of the creditors of the vendor. Such a proposition was held not to be a participation in the fraud, but on the contrary to put the property to its legal use by applying it, though by a preference, to the payment of the debts of the fraudulent vendor.

The tests turn not upon the right of the creditor to prefer, nor on the failure of the non-preferred creditor to secure his claim, but upon the honesty of the parties to the transaction in

Green *v.* McCrane.

simply giving and receiving a preference and the absence of any intent to secure a benefit for the debtor or to hinder or delay his other creditors.

The case of *Milton* v. *Boyd, 4 Dick. Ch. Rep. 142,* to which my attention has been called, has no application to the case now before the court. In that case the mortgage of the complainant, Milton, was made in consideration of a present value passed for it, and, without any recording, gave to Milton a legal title as against the mortgagor and all the world except creditors and subsequent purchasers and mortgagees in good faith, under the fourth section of the Chattel Mortgage act. The mortgage of the defendant, Boyd, was subsequently given to secure a preceding debt, but was recorded before the Milton mortgage. The court held that the previous record of Boyd's mortgage did not protect him against the superior equity of the prior though unrecorded mortgage of Milton, because Boyd was not such a *bona fide* mortgagee as the statute contemplated, in that he paid nothing and parted with nothing, and did not change his position in any way, at the time he received his mortgage. He took the interest which the mortgagor had, but subject to the equities with which it was then charged, one of which was Milton's mortgage. There was also, in that case, strong evidence of a fraudulent design on the part of the defendant, Boyd, because he secreted the fact that he had an agreement for a mortgage for several years before he took it, and thus enabled the mortgagors to secure a credit by their apparent ownership of their goods, though they were bound to him all the while to pledge their goods to secure his debt. There is, however, in the case cited, a distinct and express recognition of the right of preference to be exercised by a debtor in failing circumstances., by which he may secure a favored creditor, provided his action and that of the creditor be free from fraudulent design to protect the debtor or defraud his creditors. *Milton* v. *Boyd, 4 Dick. Ch. Rep. 153.*

In the case now before the court, the complainant had, at the most, a mere latent equity, of which the defendant mortgagee is not shown to have had any notice until after her legal right had been fastened upon the mortgagor's goods by the delivery and

record of her mortgage. After this had been fully accomplished, the complainant for the first time acquired a lien by his own sole act, without giving anything for it or surrendering any right. Neither his equity nor his legal right is in any way superior to that of the defendant. He is, of course, not a *bona fide* purchaser or mortgagee as contemplated by the statute and interpreted in *Milton* v. *Boyd,* nor is he even a *bona fide* lien-holder within the spirit of that case, because he secured his lien as a mere volunteer, uninvited, and without the passing of any present consideration. He cannot successfully attack the defendant's mortgage as a creditor under the chattel mortgage act, because her mortgage is prior in point of time of its delivery, and the mortgagee has complied, as above shown, with all the requisites prescribed by that act which are necessary to make her chattel mortgage valid against creditors and subsequent *bona fide* purchasers and mortgagees.

This branch of the case has been considered in the most favorable light for the complainant that the circumstances shown would justify, treating the chattel mortgagee as if her mortgage had been given simply to prefer a pre-existing debt and not as a *bona fide* mortgagee who had changed her position to her debtor in order to secure her lien. I have discussed her equities as only equal to those of the complainant and becoming superior by the recording of her mortgage, by which they were developed into an actual legal right before the complainant acquired any lien upon the property. There is another view which might be taken of her *status* which would place her in a much more substantial position as to the consideration of her mortgage. When she gave up the due and payable notes which might have been prosecuted immediately and took a bond, payable at a future date, in consideration that its payment should be secured by the chattel mortgage, it might be claimed that she gave up her then existing and perfected right to collect her money as a consideration for her present lien, and that she thus became a *bona fide* mortgagee in the broadest sense of the term. All this time the complainant had no fixed and ascertained charge on the property, and it is only after the defendant's equity had become an actual

legal right that his own claim became a lien by his purely voluntary act. The point was not argued and I do not deem it necessary to pass upon it.

I see no reason in any of the objections to the defendant's mortgage which would justify the issuing of an injunction. I will advise that the order to show cause be dismissed and the restraining order dissolved.